**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES ARCHIBALD,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **CROTHALL HEALTHCARE INC.** | ) | |
| | ) | |
| | ) | **TRIAL BY JURY DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiff, James Archibald, by his attorneys, Vucko Law LLP, states:

**NATURE OF PROCEEDING**

This is an action by James Archibald ("Archibald" or "Plaintiff") against Crothall Healthcare Inc. ("Crothall" or "Defendant"). Plaintiff hereby brings claims for violations of the Americans with Disabilities Act ("ADA"), and retaliation under the Family and Medical Leave Act, 29 U.S.C. §2601 et. seq. (the "FMLA"), arising from Crothall's intentional mistreatment and retaliation against Plaintiff in connection with his diabetes and intermittent leave associated therewith. Crothall repeatedly denied Archibald career advancement because of his diabetes, despite Plaintiff being more qualified than those candidates promoted or hired by Crothall over him. Indeed, a former Senior Regional Director for Crothall informed Archibald that Archibald's diabetes-related absences, which were taken as approved intermittent leave, were the only thing that kept him from advancing within the company. Crothall even turned a blind eye when Archibald complained that he was subjected to harassment and discouragement in connection with

1

his requests to exercise leave which Crothall had confirmed he was eligible to take when needed in connection with his diabetes. Despite Plaintiff's multiple complaints to Crothall, he continued to suffer harassment, discrimination and retaliation from Crothall until ultimately leaving the company.

## PARTIES

1.  Plaintiff is a citizen of the United States and is an Indiana resident, currently residing in Schererville, Indiana.

2.  In April 2018, Archibald began his employment with Crothall as a full-time Operations Manager responsible for scheduling and assigning housekeepers who performed services at the University of Chicago Medical Center where he was based in Chicago, IL, and Archibald continued working there for Crothall in that capacity until his final day worked on March 27, 2020 (collectively his "Employment Period").

3.  During his Employment Period, Plaintiff was an "employee" of Crothall as defined by the ADA and the FMLA.

4.  Defendant Crothall is a Delaware corporation.

5.  Crothall regularly engages in commerce within Illinois.

6.  During Plaintiff's Employment Period, Crothall was an "employer" of Plaintiff as defined by the ADA.

7.  Throughout the Employment Period, Crothall had 50 or more employees within a 75-mile radius of the University of Chicago Medical Center where Archibald was based, and is a "covered employer" within the meaning of the Family and Medical Leave Act ("FMLA")

8.  Crothall employs over 50 people and did throughout the Employment Period.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over Counts I-III of this action pursuant to 28 U.S.C. §1331 because those claims arise under the laws of the United States.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because Defendant does business here and/or did business here during the relevant time period and all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

11. Plaintiff has exhausted his administrative remedies and his filing of this Complaint is timely.

## FACTUAL BACKGROUND

12. Plaintiff met or exceeded Crothall's reasonable performance expectations throughout his Employment Period.

13. In connection with his hiring, Crothall became aware that Plaintiff has a disability.

14. Plaintiff's diabetes qualifies as a disability under the ADA.

15. Plaintiff had diabetes throughout his entire Employment Period as defined herein.

16. Plaintiff's diabetes substantially limited Plaintiff's ability to perform one or more major life activities, including without limitation, thinking, concentrating, interacting with others, speaking, working, and walking. In addition, his diabetes substantially limits the operation of one or more of Plaintiff's major bodily functions, including without limitation his digestive and neurological functions.

17. During the Employment Period, and including in 2019, Archibald suffered from diabetes-related symptoms which would at times render him unable to work (each a "Diabetic Illness"). This would occur intermittently and would typically resolve within 1-2 days.

18. Archibald was qualified to perform the essential functions of his job with or without accommodations.

19. In 2018 Archibald used his personal sick days to address Diabetic Illnesses.

20. Sometime in 2018, Tony Wesley, Archibald's director at the time, summoned Archibald to his office and told him that calling off from work would hinder his chances for career advancement with Crothall. Archibald responded by pointing out that his diabetes condition would from time-to-time require him to be absent from work. Mr. Wesley responded that he understood but still indicated that Archibald needed to limit his absences. Archibald complained of this encounter to Crothall's human resources department.

21. Sometime in 2019, Archibald put Crothall on notice that he would need intermittent FMLA leave in connection with his Diabetic Illnesses.

22. Sometime in 2019, Crothall acknowledged that Archibald was an eligible employee for purposes of taking intermittent leave under the FMLA when Archibald would sustain a Diabetic Illness.

23. Archibald regularly worked 40 or more hours a week and by April of 2019 had worked for Crothall for 12 months.

24. Sometime in 2019, Plaintiff requested and Crothall granted Plaintiff the ability to take intermittent FMLA leave in connection with the Diabetic Illnesses.

25. Crothall affirmatively represented to Plaintiff that he was eligible for FMLA leave.

26. From approximately December of 2018 until the end of his Employment Period, Plaintiff internally applied for promotions with Crothall on no less than six different occasions ("Applied Promotions").

27. Less qualified candidates than Archibald (some of whom lacked experience and/or had a record of progressive discipline from Crothall, while Archibald did not) were ultimately selected over Archibald and offered the roles that Archibald sought with the Applied Promotions.

28. Sometime in early 2019, Pradip Patel told Archibald that Archibald's absenteeism could negatively impact Archibald's likelihood for promotion within Crothall.

29. Archibald complained to Crothall that he was treated less favorably in connection with his absences related to his diabetes.

30. In early 2019, Archibald requested and was granted FMLA leave in connection with a family member's medical issue.

31. Also in 2019, Archibald requested and was granted the permission to take intermittent FMLA leave in connection with diabetes.

32. After Crothall granted Archibald leave, certain Crothall superiors of Archibald responded with hostility and negative comments which served the purpose of harassing Archibald and interfering with his willingness to take intermittent leave, discouraging him from fully availing himself of his FMLA and ADA rights to leave which Crothall had deemed him eligible to take.

33. In 2019, Archibald complained to Crothall's human resources department that his manager Cecil Simon had been harassing Archibald whenever Archibald would exercise his right to intermittent FMLA leave.

34. In 2019, Archibald complained to Crothall's human resources department that his manager Cecil Simon did not take Archibald's requests for leave seriously.

35. Sometime in 2019, Archibald's director Cecil Simon began targeting Archibald for mistreatment and harassment in connection with Archibald's FMLA leave, including without limitation by calling Archibald's personal phone while he was on FMLA leave, singling Archibald

out for assignment to additional and/or more difficult work than similarly situated employees outside of Archibald's protected class.

36. In approximately July of 2019, Archibald complained to Crothall's human resources department that Archibald was being denied promotions because of his diabetes-related absences from work.

37. Cecil Simon and Curt Courtad were both Archibald's superiors at Crothall, and both engaged in harassment and spoke discouragingly of Archibald's intermittent leaves of absence in connection with Archibald's diabetes.

38. While both were still employed by Crothall, a former Senior Regional Director for Crothall informed Archibald that Archibald's diabetes-related absences were the only thing that kept him from advancing within the company.

39. In October of 2019, Archibald complained to Crothall that his superiors Jim Welsh, Pradip Patel, Tony Wesley, Cecil Simon, Rodney Foxx, and Curt Courtad each had been involved in discriminating and retaliating against Archibald in connection with his candidacy for the Applied Promotions. Archibald also again complained of retaliation at this time.

40. In 2019, Seymour Henderson, a Training Manager at the time, recommended Archibald be promoted to a certain role and Pradip Patel refused, telling Seymour that Archibald had an attendance problem.

41. Each absence Archibald took in 2019 was for a reason for which leave had been approved by the company.

42. On November 7, 2019 Archibald's candidacy for one of the Applied Promotions was rejected, again in retaliation for Archibald's engagement in protected activity.

43. In 2020 Archibald was a finalist candidate for a Training Manager position and as part of the interview process for this role Archibald and each of the other two remaining finalist candidates were tasked with making a presentation to a panel that was comprised of Crothall's Cynthia Garcia, Tina Robinson, and Nicole Ford (the "Panelists").

44. Archibald is aware that the Panelists recommended Archibald be selected as the person to fill the abovementioned Training Manager position, but that Jim Welsh (then Crothall's Regional Director of Operation) targeted Archibald for retaliation and did not accept the recommendation of the Panelists, and instead awarded the position to Karyn Franklin.

45. At the time Karyn Franklin was awarded the abovementioned position, Karyn Franklin had no floor maintenance experience or knowledge.

46. Upon information and belief, Karyn Franklin's presentation before the Panelists did not go well, in part due to her lack of applicable experience.

47. In February of 2020 Archibald complained again to Crothall, stating that Jim Welsh and Curt Courtad had targeted him for mistreatment and that both were upset with Archibald because he complained to Crothall about their retaliation against Archibald and their involvement in intentionally rejecting Archibald as a candidate for the Applied Promotions despite his qualifications and background being more competitive than candidates who were ultimately selected over him.

48. Crothall failed to investigate or remedy the pattern of discrimination and retaliation, and Archibald ultimately decided to seek employment elsewhere, leaving Crothall in March of 2020.

## COUNT I

**VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C.S. §12101 *et seq.*)**
**DISCRIMINATION (FAILURE TO PROMOTE, HARASSMENT)**

49. Plaintiff realleges and incorporates by reference paragraphs 1 – 48 above.

50. During the Employment Period, Plaintiff had diabetes, which substantially limited one or more major life activities, including but not limited to the ways set forth in this Complaint, and his diabetes qualifies as a disability under the Americans with Disabilities Act (42 U.S.C.S. § 12102).

51. Archibald was qualified to perform the essential functions of his job with or without reasonable accommodation.

52. Crothall took one or more adverse actions against Plaintiff because of his disability, including without limitation by subjecting Archibald to different and less favorable terms and conditions of employment than employees who did not have diabetes, by failing to promote Plaintiff when he was the most qualified candidate including without limitation for the Applied Promotions, and by interfering with Archibald's approved leave and/or discouraging him from using the same.

53. Crothall unreasonably failed to take remedial action for the discriminatory conduct Archibald complained of.

54. Crothall interfered with Archibald's approved leave and/or harassed and/or discouraged him from using approved leave.

55. Crothall subjected Archibald to discrimination because of his diabetes.

56. Crothall's discriminatory conduct was intentional.

57. Crothall's conduct was done with malice or reckless indifference to Plaintiff's rights under federal law.

58. Archibald was damaged by Crothall's discriminatory conduct in violation of the Americans with Disabilities Act. Plaintiff's damages include, but are not limited to, his lost wages (front and

back pay), damage to his career, lost benefits, future pecuniary losses, inconvenience, embarrassment, emotional and psychological harm and other harm.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendant, and respectfully requests that the Court:

    A.  Declare Crothall's conduct to violate the rights guaranteed to Plaintiff under the Americans with Disabilities Act;

    B.  Grant a permanent injunction restraining Crothall, its officers and employees and all persons in active concert or participation with Crothall from engaging in any employment practice which unlawfully discriminates on the basis of a disability;

    C.  Order Crothall to make Plaintiff whole by providing the affirmative relief necessary to eradicate the effects of Crothall's unlawful practices;

    D.  Grant Plaintiff consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for embarrassment, emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

    E.  Grant Plaintiff such equitable and injunctive relief that the Court may deem appropriate;

    F.  Grant Plaintiff his attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements; and

    G.  Grant Plaintiff such further relief as the Court deems necessary and proper.

**COUNT II**

**VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT**
**(29 U.S.C. §2601 *et. seq.*)**
**FMLA RETALIATION**

59. Plaintiff realleges and incorporates by reference paragraphs 1-48 above.

60. Plaintiff was eligible and entitled to FMLA no later than April of 2019.

61. Crothall is equitably estopped from denying Archibald's entitlement to FMLA leave because Crothall affirmatively represented to Archibald that he was eligible for FMLA leave.

62. Because Crothall affirmatively represented to Archibald that he was eligible for FMLA leave, he was entitled to take leave under the FMLA.

63. Archibald provided sufficient notice of his intent to take leave.

64. Archibald engaged in protected activity when he requested leave.

65. Archibald engaged in protected activity when he complained to Crothall of FMLA retaliation.

66. Crothall and certain of its employees retaliated against Plaintiff because of his request for FMLA leave, including without limitation by intentionally failing to promote him to positions for which he was the best qualified candidate, and harassing Plaintiff including by making comments to discourage Archibald from taking leave.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendant, and respectfully requests that the Court:

A. Declare Defendants' conduct to violate the rights guaranteed to Archibald under the Family and Medical Leave Act;

B. Order Defendants to make Archibald whole by providing the affirmative relief necessary to eradicate the effects of Crothall's unlawful practices, including frontpay;

C. Grant Archibald consequential, compensatory, liquidated, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

D.      Grant Archibald such equitable and injunctive relief that the Court may deem appropriate;

E.      Grant Archibald his attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

F.      Grant Plaintiff such further relief as the Court deems necessary and proper.

## COUNT III

### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C.S. §12101 *et seq.*)
### RETALIATION

67. Plaintiff realleges and incorporates by reference paragraphs 1 – 58 above.

68. Archibald engaged in statutorily protected activity by requesting workplace accommodation(s) from Crothall in the form of leave.

69. Archibald engaged in statutorily protected activity when he complained of alleged discrimination in connection with his disability, including without limitation concerning his complaints regarding harassment and Crothall's failure to promote Archibald because of his diabetes.

70. After Archibald engaged in the abovementioned protected activity, Crothall subjected Archibald to further adverse employment actions, including without limitation by continuing its practice of failing to promote Archibald while instead placing less qualified candidates into roles which Archibald sought.

71. Crothall did not subject other, similarly situated employees who did not engage in protected activity to adverse employment action.

72. Crothall's discriminatory and retaliatory conduct was intentional.

73. Crothall's conduct was done with malice or reckless indifference to Archibald's rights under the ADA.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendant and respectfully requests that the Court:

A.      Declare Defendant's conduct to violate the rights guaranteed to Plaintiff under the Americans with Disabilities Act;

B.      Grant a permanent injunction restraining Defendant, its officers and employees and all persons in active concert or participation with Defendant from engaging in any employment practice which unlawfully discriminates on the basis of a disability;

C.      Order Defendant to make Archibald whole by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, including frontpay;

D.      Grant Archibald consequential, compensatory, punitive, nominal and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial;

E.      Grant Archibald such equitable and injunctive relief that the Court may deem appropriate;

F.      Grant Archibald his attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements;

G.      Grant Archibald such further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

74.     Plaintiff demands trial by jury on all counts and issues so triable.


Respectfully Submitted,

/s/ _____Stacey Vucko_____
STACEY VUCKO
Attorney for Plaintiff James Archibald


Dated: November 5, 2021

STACEY B. VUCKO
JOSEPH W. VUCKO
VUCKO LAW LLP
2208 Midwest Rd., Suite 104
Oak Brook, IL 60523
312-522-2517
svucko@vuckolaw.com
jvucko@vuckolaw.com